Good morning, Your Honors. May it please the Court, my name is Celeste Bakke and I am appearing on behalf of Petitioner Martin Kipp. Excuse me, I'd like to reserve eight minutes of my time for rebuttal today. There are a number of disparate issues before the Court this morning, but one common theme resonates through each, and that is that the narrative presented to the jury about Martin Kipp and the crimes he was charged with committing in this case was deeply flawed and prejudicial. The prejudice started in the guilt phase, when the jury was erroneously permitted to consider highly inflammatory evidence about an uncharged rape and homicide in support of the most contested fact at trial, whether Mr. Kipp raped or attempted to rape Antia Howard and was therefore eligible for the death penalty. This prejudice was compounded by juror misconduct during guilt phase deliberations, despite the unconstitutional inclusion of the Frizzell evidence in the Howard trial, at least several jurors remained unconvinced by the prosecution's case-in-chief and took it upon themselves to bring in and rely upon impermissible extrinsic evidence to find Mr. Kipp guilty of homicide and attempted rape. And throughout the trial, due to trial counsel's ineffectiveness, we had a biased juror who expressly stated that she could not give Mr. Kipp a fair trial, sit in judgment of him. Finally, the prejudice was perhaps at its most extreme in the penalty phase, when the jury never heard the reality of Mr. Kipp's tragic upbringing and the trauma that he experienced. These are the main areas of the hope to cover this morning. I'd like to start with the juror misconduct claim, if I could. The Constitution requires that a criminal defendant be tried by a jury capable and willing to consider solely the evidence before it. And unfortunately, Mr. Kipp's jury did not abide by this essential principle. Both the experiment on the pants and the flyer explaining the effects of cocaine were extrinsic evidence which raised a presumption of prejudice that respondent was obligated, under clearly established federal law in Maddox and Remmer, to rebut, but did not. And in fact, the government conceded in state court that both of those pieces of extrinsic evidence presented a presumption of prejudice that they then needed to rebut. Then, in addition to the extrinsic evidence of the flyer and the experiment, the foreman of the jury, the same man who brought in the flyer on cocaine, set himself forth as an expert on the matter by referring to the flyer and discussing, yes, his own personal experience with cocaine, but purporting the way that he did it was in such a way that it turned him into an expert, and his expressions more of expert-like statements, which this Court in Mock v. Stewart found impermissible. So once, again, once it was established that this extrinsic evidence existed, Respondent was obligated to rebut it with other contrary evidence not coming from the juror declarations themselves, and they did not do that. So where we stand now is the State court could not have reasonably found that Respondent adequately presented the other contrary evidence in order to rebut the presumption. At the very least, the State court should have held a hearing on the matter. This Court most recently in Godoy set forth that standard, and again, the State court erred in not abiding by it. Therefore, we satisfy D-1 on that prong.  Sotomayor, I guess I want to make sure I understand why you think there's prejudice, even if there was juror misconduct, why there was prejudice? What's your strongest argument as to prejudice? With regard to each of the pieces of extrinsic evidence, they went to an essential element of the attempted rape charge and special circumstance consideration. The jury expressly relied upon it in order to come to their decision that Mr. Kipp did in fact commit that crime and was guilty of that special circumstance. And objective statements in the juror declarations, which we are allowed to look to, give the indication that prejudice did in fact exist because the jury was affected by that evidence and relied upon it in coming to their verdict on the matter. Again, just to emphasize, where we stand is that there's been no rebuttal. It's not our burden to demonstrate prejudice, but we do believe that prejudice exists based primarily on the fact that it goes to a specific element of the crime charged and the special circumstance. If Your Honors have no questions about the juror misconduct claim, I'll move on to the certified claim, which is the due process claim. As I stated before, the admission of the Frizzell evidence was highly inflammatory evidence, the most inflammatory evidence presented at trial, and it was hotly contested during the state court proceedings. The trial court acknowledged that the question was a close one, and unfortunately the trial court made the wrong choice in allowing it to be admitted. And I believe that evidence or excuse me, yes, evidence in the record that shows that this was, this evidence was presented more for propensity or to go to character than anything else is the fact that the prosecution opened its case not with witnesses for the Howard murder, but with the mother of Tiffany Frizzell, who recounted every parent's worst nightmare of sending their child off to a new town for college and two days later she's murdered. Fifteen witnesses, nearly half of the witnesses in the Howard trial testified about Ms. Frizzell. But so you can't, but there's no clearly established law regarding this evidentiary provision, it's the equivalent of 404B, I think it's California 1101, I think. So what's your pathway in terms of getting to, for us to be able to review that piece of evidence and I guess that argument? We can do that in two ways. We can, our belief is that the court actually never addressed the federal constitutional question, excuse me, the state court, the California Supreme Court never addressed the federal constitutional question and we can overcome Johnson, but more specifically going to 2254D, we satisfy 2254D too, primarily because the supposed similarities between the crimes as found by the California Supreme Court were not really such striking similarities at all. There were five specific factors that the state court relied upon to say that the crimes were similar and if you go through and look at the record for each of these five factors, the court either misinterpreted or applied an inference that simply was not supported by the evidence presented at trial. So let's see, there was age, gender? In terms of the similarities, yes. Yes. Age, gender, the method of killing, strangulation? Yes. Right? And those are factors that are true, sadly, of many rape murders of young women. So those are not sufficient. Let's see, there was bruising on the legs? There was some evidence of bruising on the legs of one victim, Ms. Howard, and there were defensive wounds on the upper body of Ms. Frizzell. So a difference in the types of wounds. And then there was cover, they were covered with some sort of bedding or blanket or something? I'm sorry, Your Honor, I apologize. They identified that their bodies were covered? Correct. The State court pointed to the fact that both bodies were covered with bedding and thought that that was strangulation. Well, it wasn't just that it was covered. Of the factors cited by the State court, strangulation of young women, I think that that could reasonably be construed as fairly generic. But the one fact that's cited by the State court that jumped out at me was that the victim, Ms. Howard, to her car, Ms. Frizzell to her motel room, and covered with bedding. So why is that not sufficiently distinctive? Or at least if we are under the AEDPA regime, and I know that you would like us to get to the NOVA, but assuming for a moment that we're in AEDPA land, then is the question then becomes whether it's unreasonable for the State court to think that that's sufficiently distinctive. Can you address that issue? Yes, Your Honor. I actually think that the State court's reliance on the supposed fact that they were killed in one location and then moved to another enclosed area is not supported by the record. It's an inference that simply is not strong enough to make. It was a reasonable inference in Ms. Howard's case, but it was not reasonable in Ms. Frizzell's. There was actually no evidence presented at trial that Ms. Frizzell had been killed elsewhere and transported to the motel. And a detective in investigating a ---- Well, it says, the State court says the undisturbed condition of the bedding in Tiffany's motel room indicated she had not been assaulted and killed on the bed in the absence of any signs of forced entry into the motel room or struggle within that room. So tell me why that inference is not supported. It's not supported because during preliminary hearing testimony by one of the investigating detectives who found the body, he stated that in his opinion Ms. Frizzell was actually killed on the floor and then moved to the floor adjacent to the bed. Can we look at the evidence that was presented at trial? I'm sorry? Aren't we supposed to look at the evidence that was presented at trial? Yes, but additionally. To draw these inferences? We looked to the evidence that the State court relied upon in coming to its conclusion that the evidence was properly admitted. And the State court explicitly said in its opinion that it looked to the preliminary hearing testimony in addition to the trial testimony. And during the preliminary hearing, the detective stated that in his opinion Ms. Frizzell was killed on the floor adjacent to the bed and then moved to the bed. Right. But isn't that unusual? Why is that not distinctive to have murdered her on the floor, but then carried her to the bed, placed her under the bedding, neatly lay her out and pulled the covers over her body? Is that not a distinctive way of sheltering the body after this regulation? That itself could be deemed distinctive. But in comparison to what was supposedly the strikingly similar fact in Ms. Howard's case, the two do not correlate. Ms. Howard's crime looks much more like the killing occurred, yes, outside of the car, potentially. There was also evidence presented at trial, though, that Ms. Howard and Mr. Kipp actually went out to the beach together. So some of the dirt that was on her clothing could potentially have been put there at that time. So when, again, when comparing these two supposedly strikingly similar facts, I don't believe that it's a permissible inference that the State court made. So that goes to our D-2 argument. What is the unreasonable factual determination? The unreasonable factual determination is that the State court did not, well, did two things. One, made inferences from the facts presented that were not supported, and therefore no inference of identity could or should have arisen. And then it ignored the differences between the two cases and therefore didn't. But we're not supposed to do that. Sotomayor, it sounds like you're asking us to do a de novo review or for us to review the facts and say, hey, we would have come out differently. It seems the case law regarding unreasonable determination of facts is very specific that we're not supposed to do that. What's your best case to support your point here that they had, that they, their process or their determination of the facts was unreasonable? Well, I think that under 2254 D-2, in analyzing what the State court did, this court is permitted to look at evidence that the State court did not, that was present, but that the State court did not consider, that the State court ignored. What's your best case for that? I'm sorry. I'm going to have to get back to you on that. I apologize. Wasn't that Maddox? Yes. Thank you. Yes. Maddox does speak to that. I apologize, Your Honor, for that. The Supreme Court really hasn't addressed 2254 D-2 extensively. I'm sorry. The Supreme Court hasn't really spelled out in detail how 2254 D-2 is supposed to, you know, how we're supposed to apply it. But Maddox is our main case that lays out the methodological, a methodological approach. Yes. There's Maddox. There's also the defective fact determination process. Correct. Or it could be a failure to consider evidence in the record or something. I think there were three criteria. I also, the United States Supreme Court in Brumfield v. Cain also touched on this question in the context of an Adkins hearing, and was the State court looking to all the evidence there when determining whether a hearing should have been held. But I agree that there has not been extensive discussion by the Court on this matter. It seems on the cases that have discussed it, they focus on a complete misapprehension of the facts by the State court or mistakes. I mean, that it wasn't accurate. Is that the case here? That the State court completely misapprehended all of the facts? And that there was inaccuracies in what they determined. Is that the case here? I believe that there are inferences that rise almost to the level of an inaccuracy when you're looking at some of the supposed similarities that existed between the two crimes. So the facts weren't misstated. It's the inferences that you're disputing. Is that right? Well, there are, yes, but there are also some facts that were misstated. For example. What her, I guess, how Frizzell's body was covered or not, whether she had on a shirt when they removed the bedding. There's questions about the way that the clothing was placed on each body, the purpose of covering the body with the bedding. So, again, going to the garment found on the upper body, there was no testimony to the effect that Frizzell was uncovered in the way that Ms. Howard was, but the two bodies were left with the shirt on and exposing the breasts. So that is, I think, an incorrect statement of the facts that were presented at the preliminary hearing. And so the evidence of that factual inaccuracy comes from the photograph? Or was there also testimony in the record to the contrary? There was testimony in the record as well at ER 1794-95 in addition to the photograph. Now, the State wanted to use this 1101 evidence for purposes of identity, correct? Yes. That was one of the theories for the admission of the evidence below. The Petitioner left his fingerprint at both locations. Yes. That was a fact that was not cited by the State. Are we permitted to consider that fact? And if your answer is no, is there a case that stands for that proposition? No, you are permitted to consider that fact. But, again, the fact that fingerprints were found in each location is not necessarily such a common signature or the highly similar evidence of identity that, in addition to everything else in terms of the differences between the two cases. Additionally, the fact that the fingerprint was ---- So we can, even though the State didn't cite to it, consider the fact that, well, wait a minute, there were fingerprints belonging to the same person found at two different crime scenes, and so we can look at that, even though that's not cited to by the State? I believe that's correct, but it doesn't ---- I believe one of the reasons the State court didn't rely upon it as something that was so strikingly similar is that there was evidence that Mr. Kipp was with Ms. Howard, for example, and the fact that his fingerprint was found in her car on an evening that he had spent time with her, was seen leaving the bar with her, could certainly have gone to the vehicle with her, is not sufficient enough to show a signature between the two crimes in homicide. I just want to see if I can ask a follow-up on this. Isn't it to show the identity that he committed the attempted rape? That was the most, yes, that was the key issue for this admission of this evidence, yes, and also the murder, obviously, because the argument was that the same person committed both crimes. But I believe that the prejudice was particularly strong with regard to the attempted rape. Without the Howard evidence, what was the State's strongest case against Mr. Kipp? I'm so sorry. Without the Howard ---- without the Frizzell evidence, what was the State's strongest case against Mr. Kipp? I believe that the fact that he was the last person seen with her that night, the fact of the fingerprint in the vehicle. And denied knowing her at all. He did deny knowing her at all when that was not the case, that he had spent time with her that evening. I think that's the strongest evidence. And it's not very strong at all, which was why the State sought to admit the Frizzell homicide in the first place. And then just going back ---- But they needed to establish the special circumstance, the attempted rape. Correct. They needed to establish the special circumstance. And just going back briefly to the juror misconduct issue, the whole reason that the jury brought in this extrinsic evidence in the first place is because the prosecution had not met its burden to show that Kipp committed the attempted rape. It was only after the consideration of the cocaine flyer and the experiment on the pants that the jury came to the conclusion that he had, in fact, committed the special. And I think that goes to the fact that the crimes were not sufficiently similar, that the State court erred in admitting it. Assuming that it was error, just for the sake of argument, that it was an error to admit the Frizzell evidence, could the prejudice analysis differ with regard to the murder and the special circumstances? In other words, could that analysis split? I think that it would be a consideration for, yes, a separate consideration for each. Our primary argument with this claim is that it most directly affected the finding of the special circumstance. Can I ask you about the ineffective assistance of counsel claim? Yes. Which one? Mr. Horan. I'm trying to figure out. You didn't submit a declaration from Mr. Horan in the State habeas proceeding or at any point. So I was just trying to figure out, was there a reason for that? My understanding is that efforts were made to speak with Mr. Horan before he died. He was not willing to speak in the beginning, I believe. And then he did die during the preparation of the habeas petition, and so no declaration. Of the State habeas petition or of the Federal habeas petition? I believe it was the State habeas petition, but I can check on that. And what about the declaration from your client, recounting any discussions with him regarding the mitigating evidence? Was there anything like that submitted? No, there was no declaration from Mr. Kipp submitted. There were declarations submitted from Mr. Kipp's family members, however. And do we know what was in the file that Mr. Horan received from Mr. Egar? Mr. Egar? In terms of the investigation into Mr. Kipp's background. In the State declarations that went with the State habeas petition, it is not explicitly stated all of, there's not a list or an index of all the documents that Mr. Egar gave to Mr. Horan. There was, Mr. Egar did state that he turned over all of the medical and police records that he had obtained up to that point. I believe some school records also, and had informed Mr. Horan that they were at the beginning of their mitigation investigation, that they had retained Craig Haney as the social historian, that Mr. Haney had started his investigation, but again it was at the beginning. So that should have alerted Mr. Horan to go speak with Mr. Haney, who was the main person getting the social history and the mitigation information from the family. Mr. Horan did not do that. He never contacted Mr. Haney, never got Mr. Haney's files, and proceeded to the penalty phase without even speaking again to Dr. Foster, who had been retained by Mr. Egar and was the main penalty phase witness at trial. So it wasn't until just prior to the penalty phase that Mr. Horan even reached out to Dr. Foster, through whom all of this mitigation information regarding the family was coming, and told him, I'd like you to testify. Can you do this? Dr. Foster reluctantly agreed, as he stated in his state declaration, but he was not given any additional materials, any additional information, and was not prepped. I'm trying to figure out, well, if Mr. Horan inherited a pretty investigative two-year, a pretty extensive two-year investigation from the prior lawyer, he could have read the results of the investigation, the notes from family interviews and reports from the three experts and, you know, could have reasonably determined that he did not need to conduct any further investigation. Why would that be wrong? I think it's wrong in this case for a couple of reasons. First, because former trial counsel explicitly told Mr. Horan, this is not done. This is the beginning. And I think also it's impossible for Mr. Horan to have determined, based on notes from initial investigations, whether or not these witnesses were necessary, important to come and testify. An uninformed trial strategy is no strategy at all, as this Court said in Correll v. Ryan. Do you think he could have concluded that, well, I can get all of this out through Mr. Foster, Dr. Foster? That's possible if Dr. Foster had actually had all of that information, and there's no indication that he actually did. He did not receive any of the – there's no indication, for example, that he received all of the records that Dr. Haney and presumably investigative notes that Mr. Haney had prepared himself. They weren't turned over to trial counsel. No indication they were given to Dr. Foster. And that's information that existed. And I think that United States Supreme Court cases from Wiggins to Rompilla specifically say when you have these indications, that further mitigation investigation is necessary. It's incumbent upon trial counsel to take additional steps. Assume for a moment deficient performance. Had there been additional investigation or additional presentation of family members, other experts who investigated, is it reasonably likely that the verdict would have been different? Yes, I think absolutely there is. The difference between what was presented at trial and what was presented both in the State post-conviction proceedings and then subsequently at the Federal The presentation of Mr. Kipp's childhood that the jury heard was strikingly mild compared to what he actually experienced. And the trauma that he experienced, actually experienced in his childhood, directly impacted later choices that he made. So the substance abuse that he engaged in from the time he was 11 years old through the time of the crime was explained, at least in part, by the trauma and the family history going back generations of substance abuse and alcoholism. Additionally, the fact that Mr. Kipp, I see I'm well into my time, but I'll just make this final point. The fact that Mr. Kipp was being charged, was charged with crimes involving violence against women, and then for the jury not to hear that through his entire childhood he was both the witness to and victim of extreme violence. That was necessary information for the jury to hear. Are you also, though, are arguing that the counsel did not adequately prepare the expert, Dr. Foster? Correct. And so do you have a case or ABA standards showing that competent defense counsel in 1987 would have prepared an expert witness? Well, this Court most recently spoke to this in Williams v. Filson, that failure to elicit relevant information and actually prepare witnesses that are going to present your main mitigation case and who did testify at a hearing was deficient performance. And I believe Wiggins also speaks to the fact that when you have information that goes only so far, it's unreasonable to stop without moving forward and getting the additional information that you know that you need from the information you already have. So if Your Honors have no further questions, I'll try to reserve my time. Do you want to take the balance of your time for rebuttal? I would, please. Yes. You got it. Thank you. Over four minutes. Good morning, Deputy Attorney General Randall Einhorn. May it please the Court, on behalf of appellee respondent. Starting with the certified issue with respect to the evidence of the rape and murder of Ms. Frazell, as the Court noted earlier in talking to counsel, the U.S. Supreme Court has never held that it violates due process to admit other crimes evidence. And the California Supreme Court's denial of Kip's claim here is consistent with the United States Supreme Court in Estelle, which held there was no due process violation in the admission of other crimes evidence where it was relevant to an issue other than propensity. And the jury was instructed not to consider it for propensity. And here the jury was instructed it could not use it as propensity evidence, but only for intent, common scheme or plan or identification. And initially, contrary to Kip's assertion in the briefing and I think what the Supreme Court's conclusion and inferences that the characteristics of the offenses involving Frazell and Howard revealed a distinctive pattern is a legal determination rather than a factual determination. But it rests on facts, doesn't it? It rests on facts. I mean, they just can come out of thin air and say, oh, this is, these are, this is, this is sufficiently, these two murders were sufficiently. Absolutely. But I guess. They're underlying factual determinations, right? Yes. And isn't that what really what her argument goes to? Well, if I heard counsel right, there's a lot of, I heard her understanding that the courts, the State courts' inferences that these were substantially similar was a mistaken factual determination under presumably D-2. And I would argue that it's, that's the overall conclusion. Well, the ultimate conclusion strikes me as a legal conclusion. Yes. But you have, that legal conclusion has to be based on a set of facts. Absolutely.  Yes. And I understand her argument to be that the set of facts that form the basis for that legal conclusion was determined in an unreasonable manner or an unreasonable way. All right. I just wanted to clarify that. Well, I don't have any problem with it. I mean, I think that's right. You know, this is both a fact law determination. If that's the case, then the California Supreme Court did not mention any fact demonstrating that how the Howard and Frizzell crimes were different. And I guess, why doesn't that show an unreasonable determination of the facts, especially under the standard that was set out in Taylor v. Maddow? I'm sorry. I think I misunderstood the Court's question. How, why isn't that an unreasonable determination of the facts when they completely ignore or don't mention at all some significant differences? I know that they do a, you know, a review for whether or not this is not just a distinctive pattern, but a highly distinctive pattern. And so for that, it seems like the Supreme Court said that both these women were the same age. The movement of the body and the blanket, I think, were the main things that they were focusing on, some of which I think counsel has pointed out probably occur in, unfortunately, in many rape cases. I'm trying to figure out why this goes to a highly distinctive pattern, especially when they did not note that the bodies were found in different places, like a car versus a motel. There was clear evidence of sexual intercourse in only one of the victims. There's evidence that Mr. Kipp knew one of the victims, but maybe not the other. The property was stolen from one victim, but not the other. One murder was by manual strangulation. The other was by ligature strangulation with a belt. Evidence that one victim was intoxicated, but not the other. One victim had defensive wounds, while the other did not. One victim had dirt on her body, while the other did not. One victim had a garment placed over her head, while the other did not. The perpetrator removed and took one victim's bra, but left the other victim's bra on her body. One had a head injury, and the other did not. I guess I'm trying to figure out, under Taylor v. Maddow, why isn't that an unreasonable determination of the facts? Well, I'll preface that by saying that certainly the crimes do not need to be precisely the same, as long as there are sufficient similar features. But with respect to the points Your Honor just made, while Kipp argues that there was evidence of sexual intercourse in the Frizzell case, but purportedly none in the Howard case, it must be remembered that Howard's body was found with her The jury determined that after hearing all the evidence regarding Frizzell. And so that's what we're determining today, if that was a fair trial, when 15 of the witnesses were Frizzell witnesses in this case where Ms. Howard was the victim. Well, the fact with that, with the evidence of sexual intercourse, the fact that there was decomposition of Howard's body essentially precluded the finding of any sperm on her body, at the very least the evidence showed that there was sexual intercourse with Frizzell and attempted intercourse with Howard. And those circumstances on that issue support a finding of similarity. And contrary to Kipp's argument that there was evidence he knew Howard but no evidence he knew Frizzell, the evidence only showed that he met Howard the night at the bar, the evening he killed her. And he similarly had just met Frizzell right before he killed her, too. While there was, while Howard was, her death was caused by manual strangulation and Frizzell was by ligature, the fact that both were strangled to death is really the key similarity. And for that matter, there was evidence of manual strangulation for But I'm looking at what was announced in Taylor v. Maddow, which held that a State court's fact-finding process is unreasonable under 2254d2 when, and I quote, the State court has before it yet apparently ignores evidence that is highly probative and central to the Petitioner's claim. Why aren't these differences that we just reviewed briefly, there may be more, I don't know, why isn't that highly probative and central to the Petitioner's claim that these were not a highly, that what happened here, these two instances were not similar and do not reflect a highly distinctive pattern? The issue here is whether the State court's determination was unreasonable. I agree with you on that. And while there are differences, the State court here could Under 2254, I'm sorry, under 2254d2, if we determine that they did not have a sufficient they were incorrect in their fact-finding process, is it, do we review for whether it was unreasonable or does that take us to a de novo review? No, it's, the State court's factual findings are presumed correct and can only be rebutted by clear and convincing evidence. And once, if that presumption is rebutted by clear and convincing evidence, then the State court still has to show the incorrectness was unreasonable under d2. I think that you read, you read E with d2. Yes. It's a limitation on d2? No, I'm saying that it's not a limitation on d2. I'm saying that if we're in the context of a factual determination, it's presumed correct. Once it's rebutted by clear and convincing evidence, then it has to be unreasonable under d1. So there is that interplay between E1 and d2. But once we, if we were to determine that it was, that the factual underlying determination was unreasonable, why doesn't that just get us out of the d1 framework or the d framework? I presume that if the Court does reach that conclusion, that it was unreasonable, then that could take it out of the d1 or d2 framework, yes. And can I have you go back to the question of whether this was an unreasonable determination of the facts, because I'm not sure that I quite got your answer. The State court indicated that there were common features that revealed a highly distinctive pattern, and then it goes on to talk about the similarities that it believes establishes that highly distinctive pattern, right? Yes. Is it problematic that there were a lot of dissimilarities, as Judge Murdia recounted, that wasn't discussed in the State court's opinion or reasoning? No, because we have to look to whether there is any reasonable basis on which the State court could have made its conclusions. And looking at the circumstances as a whole, as we talked about, we touched upon the fact that the really important similarities here is both victims being 19, 18 or 19, neither acquainted with Kip, both covered totally with the bedding, both. I'm sorry. Go ahead. I was just going to point out both having their pants and panties removed, leaving fingerprints at both seams. But one of them did not have them removed. Well, one of them did not have them completely removed. One of them had it at her ankles. The other one was completely removed. And when we're looking at highly distinctive patterns, does that matter? And I don't know. I'm just asking because I want to give you an opportunity to help me sort this out. Well, both were removed from covering the genital area, whether they were totally off the body or down at the ankles, that's a distinctive pattern, amongst all the other ones that the Court could reasonably conclude in finding distinct enough under 1101 to be admissible. And does it matter? I just want to know, is it relevant? Is it matter that some of these similarities that the State court found are somewhat generic and common to many rapes? It's certainly relevant to whether the State court reasonably found they were distinctive enough, but while there may be some that are relatively common, in looking at everything together, it presents a picture of sufficient similarity that the State court could reasonably found that it was admissible for common scheme or plan. There was one, I'll just use the term distinctive fact that the Cal Supreme Court identified that doesn't even seem to be accurate, and that's the statement regarding the shirt that was above her breasts with respect to Frizzell. Yes. And if you look at the photograph, she's completely covered. That's correct. That seems to be like just an inaccurate factual determination. That seems to be like unique, on the other hand, as well. I think on that issue the Court kind of grouped them together and said both bodies, the bodies of both victims were found with a garment on the upper body while the genital areas were enclosed. And that's a misstatement as to Ms. Frizzell, correct? It is with respect to the photo involved shows her shirt lifted and covering her breasts still, but as we pointed out in the brief, her bra was removed as was Ms. Howard's, although it was still left on the body. So in that sense, the breasts were uncovered by the bra. That's not what the Supreme Court said, though. Correct. But despite that one factor, we have all the other factors that I've discussed and laid out in the brief. So what do we do with that? Does that just drop out of the? No. You look to, aside from that, are there numerous other similarities that were sufficient for the Supreme Court to reasonably find that they should be admitted under the 1101? Let me ask you, there was a question that Judge Wynn asked of counsel a moment ago, a few minutes ago, whether it's possible to draw a distinction between the murder and the special circumstance with respect to this claim. What's your response to that? I heard that question. I wasn't totally understanding it at the time. But whether this evidence is pertinent? Assuming that the Frizzell evidence was erroneously admitted, right, then we get to the question of prejudice. Can the prejudice analysis differ as to the murder and the special circumstances? So in other words, can we say, well, that was erroneously admitted. Was the evidence sufficient for the jury to return a first-degree murder conviction as to Ms. Howard? And it may be. We'll have to talk about it and analyze the evidence, given the fingerprint evidence, the false denier, et cetera. But I don't see how that could then rescue the special circumstances of attempted rape. I think that's a much taller mountain to climb for the prosecution in this case if we conclude that the Frizzell evidence was erroneously admitted. Because in the absence of the Frizzell evidence, what's left for the jury to conclude that there was attempted rape? Aside from the Frizzell evidence with respect to the attempted rape, we have her beaten body and her blouse pulled back and her bra twisted above, her breasts and her jeans and panties at her ankles. That's sufficient. A jury could sufficiently found he attempted to rape her based on that evidence. But given the fact that they were together earlier in the evening and drinking and that she'd left with him, what's the distinction between attempted rape versus perhaps consensual sexual activity? Well, there was severe physical damage to Ms. Howard's body. In fact, more severe certainly than Ms. Frizzell. Her head was beaten badly, if I recall correctly. And that would certainly weigh strongly against anything that happened consensually. Do you agree with the premise that if we conclude the Frizzell evidence was erroneously admitted, that the analysis could be separated as to the murder conviction and the special circumstances? It seems so. Moving on to address the... I guess, why did you use the Frizzell? I mean, if you had the... I mean, if there was enough evidence, why did you need the Frizzell evidence? Well, prosecutors aren't limited in... No, I know. But it just seems that... It's like he was on trial. You know, the problem when you read this... I'm sorry? When I read this, it looked like he was on trial for both murders. Well, I mean, if it's relevant evidence... Sure. If it's relevant, it's certainly... You know, I'm well aware of the use of prior act's evidence to prove intent. It was very helpful because of the similarities. Well, it's extremely helpful. But that doesn't make it a constitutional violation. I understand. I understand. Just... It was strong evidence that the... It was helpful in the prosecution's case, and there's no reason they should have been limited in using it. And if you have good evidence, this was three months apart. These murders happened three months apart. So this pattern was powerful. And because it was prejudicial, all, usually most evidence prosecutors submit is prejudicial in the sense it's not helpful for the defendant. But the issue here was the court unreasonable. Can I ask you questions about the ineffective assistance counsel? Certainly. What's your position, or do you concede that Dr. Foster's testimony about Mr. Kipp's life at home from ages, I think it was 2 to 15, was inaccurate? One has to realize what Dr. Foster and Mr. Horan were working with in terms of the reasonableness of their actions has to be determined or substantially influenced by Kipp's own statements. And he made clear that he did not want Horan to bring in family members or bring up his background or disparage John Kipp. Yeah, but I'm just asking you, was it accurate? I know they may have had issues. But it was inaccurate. I think there was some portions that didn't have the degree of ---- Well, when Dr. Foster said Mr. Kipp was not physically abused as a child, would you say that is true information? No. There was, depending upon what age we're talking about, there was evidence of that, and I believe that there was evidence admitted at trial as to at least an incident where John Kipp hit Kipp in public, which was a big humiliation. So there was some of that physical evidence. And the investigation cannot necessarily be faulted for information that the client doesn't want to provide. I mean, we have some of this evidence that came out a decade later after years of investigation on habeas that may not have been apparent to the defense team at that time. Well, between the ages of 2 and 11, which are formative years for any person, it turns out that he was physically abused. And the description, well, you have the descriptions on how he was physically abused by his father or stepfather. I don't remember that relationship. And just trying to figure out how that would not have been relevant. And here, Dr. Foster said he had a wonderful life during that time. And it makes it seem like Mr. Kipp sort of made a choice of how, I mean, more that he was making a choice of how he was going to live his life when he had a lot of adversity, it seems, to overcome. I'm not saying anything that justifies what he did, but I just wonder if this is relevant for the jury and they never heard it. It may be relevant, but trial strategy is trial strategy. And Horan wanted to go with that Kipp was a good kid. Some of his friends admired him. And the jury should have mercy on him. And that wasn't necessarily an unreasonable tact for Mr. Horan to take in light of the wide efforts. Well, but if he had done his, what some may say his job, he would have, or you think he knew, are you arguing that you think Mr. Horan knew that all of this evidence was there and he chose just to have Mr. Foster testify untruthfully? No, I don't know what Mr. Horan known. I will point out that he did have Mr. Eager's complete organized files of two years worth of investigation that was done at the time with Dr. Foster, Dr. Haney, Dr. Poor. And with the reference to counsel's remark that Mr. Horan never had Haney's files, I don't think the record supports that. I think all the investigation for the two years that happened were before Mr. Horan and Foster stayed on with Horan as did the defense investigator, as did co-counsel. So that was a pretty extensive investigation. You would think that if there was such an extensive investigation that Horan would have provided the notes from these other. Right. And given them to Foster. But Foster says he didn't speak with Horan. Well, I don't think Foster. Well, over what he was going to testify to. Well, while Dr. Foster may feel, you know, with the benefit of hindsight, he could have been better prepared to testify. If the court looks at his testimony, it's difficult to read it as anything but compelling and diligent. And the prosecutor noted that in the court, which was very. Well, Dr. Foster, I think, you know, he says it appears Mr. Kipp's defense counsel called just one key witness, and that was Dr. Foster. And, you know, that could be a strategic decision. But counsel, from what I read, did not ask him to testify until the eve of trial. Dr. Foster had never testified in a death case before. And counsel completely failed to prepare that witness. So I guess let me ask you, what could possibly be the strategy behind that choice? Well, I can't speculate as to the strategy. And where this is Dr. Foster saying this. Well, but you just did earlier speculate on the strategy. So would you agree that's not that's there's not a reasonable strategy? No, because Dr. Foster set forth a whole bunch of knowledge about what it was like to grow up on the Blackfoot Reservation and our Native American reservations. And much of what counsel was trying to do was show the poverty, neglect, the alcoholism, et cetera, that went up, went into growing up on these reservations. And rather than necessarily bringing in a bunch of bad acts of physical violence, you have to remember also that Kip fired Eager because he didn't like the tact that he was taken. He made it very clear in his letter that he had very much disdain for the experts, at least Ms. Poore, Dr. Poore, excuse me, and Mr. Eager. And he fired them and didn't like that tact. And so this shift was... Wasn't he upset that Eager had fired his then girlfriend who was Eager's paralegal? He might have, but I think he greatly disparaged the notion that the people were investigating his life and his upbringing and some of this type of mitigation thing that, you know, he commented that they don't know what they're talking about or their stuff is foolish. So he was... There was that article that came out on the reservation that was very embarrassing. So Mr. Horan focusing on some more general concepts of the difficulties that living on the Native American reservation and Kip's experience and focusing more on that he was a good person, deserved mercy, it was reasonable. And I would point out just with respect to prejudice, I think we may have touched upon that earlier, that the California Supreme Court here also may reasonably determine that Kip failed to demonstrate any prejudice from this because regardless of the mitigating evidence discussed, there was overwhelming aggravating evidence here. Kip raped or attempted to rape four young women and ultimately strangled two to death. They were both 19 or 19, 18 and a reasonable jurist could conclude that failure to put on additional instances of physical or abuse or neglect wouldn't have changed the balance of aggravation against mitigation. Let me turn to jury misconduct issues because I'm running short in time. With respect to the juror experiment involving the pants, as pointed out in the brief, much of the proper testimony in the declarations is admissible because it concerns the jurors' mental processes outside of the objective parts that would be admissible. And the same is true for the statements of other jurors. And both California and lower federal court law hold that jurors can conduct experiments with evidence received in court so long as the experiments are new fields. The pants experiment, if you will, did invade new fields because both the pants of the used by the juror as well as Ms. Howard's pants were hemmed with tape. And this experiment was not outside of the scope of the evidence at trial. The jurors could have conducted the same experiment with the pants admitted in evidence, but they had a terrible smell from the condition of the body. And jurors can use common experiences and illustrations in reaching their verdict. So you think it was proper? The ---- You would condone that? The State court could have reasonably found that it was not misconduct, yes, and the State court could have found that even if it was misconduct, it was nonprejudicial because the results of this so-called experiment are hardly remarkable that sticking a toe through pants that are taped up the hem that it become loose and also that the state of the pants. I guess you're saying it's not extrinsic evidence that came in improperly or ---- Yes. Yes. I don't think it falls within the type of extrinsic. What's your best case for that? I believe I've cited some in the brief, but I don't have them off the top of my head. I believe there was a number of them in there. I'm sorry. That's not very helpful. So help me with the prejudice analysis and respond, if you can, to Ms. Bakke as arguments regarding the prejudice on that. First, as I noted, that that was hardly a remarkable result, that the toe could rip tape that was hemmed up. And the state of the pants didn't show whether any attempt or occurrence of intercourse was consensual or nonconsensual. It didn't increase significantly any evidence that Kip attempted to rape Ms. Howard. And as we talked about a little bit earlier, aside from the consideration of the pants hem, the evidence supporting the attempted rape consisted of the state of Ms. Howard's body and her clothes and also, of course, the inference from the Long Beach case. And then jumping to the flyer, the state court here, first of all, the juror Milan M. can't properly be characterized an expert on cocaine and alcohol just because he was a recovering alcoholic. That sort of overstates it. And the California Supreme Court could have concluded that any presumed prejudice has been rebutted. There was no relevance to Kip's guilt because in the guilt phase there was no evidence that Kip used cocaine. There was evidence that both were intoxicated from alcohol and the jurors would have expected them to be less sexually inhibited. If the jurors learned that cocaine can increase a sex drive, that wouldn't likely have influenced the deliberations as to whether Kip attempted to rape Howard. And the state court also could have reasonably concluded that this single-page flyer designed to give general information contained little or no information outside of the knowledge of the jurors. And for the same reason it was reasonable for the state court to find any prejudice was rebutted, there has been no showing of a substantial injurious effect if we were to get to the correct analysis. That's my 20 seconds remaining. I'll answer any questions. Before you conclude, I just was curious about what your view is on whether California's moratorium on the death penalty has any effect on this case or if there's any prospects for mediation. No. Our position is as stated in the letter that we can't identify a direct impact that the language of the order specifically provides that it doesn't provide for the release of any person from prison or otherwise alter any conviction or sentence and doesn't create any rights, benefits, or substantive otherwise. And with respect to mediation, this case's amenability to mediation is not affected by the governor's order as we see it, and we don't believe there's any basis for mediation. I take it, though, that the AG's office is evaluating, because we've gotten letters in other cases as well that your office is in the process of evaluating how to proceed moving forward, and if there is a change or decision by the AG, you'll immediately notify the court? Yes, absolutely. Thank you. Thank you. Thank you. Appreciate your argument. Thank you. Your Honors, I'd like to just quickly mention a few points, and Judge Wayne, I'd like to apologize because I think I misunderstood one of your questions earlier regarding the extent to which we could rely on the fingerprint evidence. I want to clarify, this is in the due process claim. 2254D does require that this court be limited to the reasons listed in the State Court opinion, and specifically then as to the attempted rape issue, the fingerprint evidence would not be considered. It would be considered for the murder because the court did rely upon that, and I think I improperly conflated that in my answer to you. You're saying because the State Court did not rely on fingerprint evidence? Correct. And the five reasons that it gave, it did not include the fingerprint evidence as part of that distinctive signature. Additionally, just quickly, the fact that the jury was instructed not to use this as propensity evidence, while juries are presumed to follow the instructions, there's evidence in the record that this jury did not, specifically by considering extrinsic evidence and conducting an experiment. So, Bridget v. Texas says when you have evidence in the record like that, you can adhere as to propensity. And then finally, with the due process claim, I think it's important that when you get one fact out of five wrong, which the State Court did in this case with regard to the clothing, it matters. That's one more thing taken away from the supposedly distinctive and highly similar facts between the two cases. Then getting quickly to the IAC in penalty phase claim, Dr. Haney stated in his declaration, which was turned over to the State Court, that he did not turn over his file to Mr. Horan. And there's no indication that Mr. Egar had Dr. Haney's complete file. More importantly, though, in terms of the deficient performance prong, Mr. Kipp did not explicitly – the only evidence in the record that Mr. Kipp forbid Mr. Horan from talking to his family is Mr. Horan's statement on the record in the motion for a new trial. But additional evidence in the record just completely cuts against that, specifically declarations from his family members who said they were willing to testify, who had freely spoken when Mr. Egar was the attorney, and who subsequently came out and made no objection for Mr. Kipp. And I think we need to distinguish this case from a case like Scherrero, where the defendant stated on the record, I'm instructing my lawyer not to present mitigating evidence. That didn't happen here. So I don't think that that bears – bears water. Roberts. Counsel said that there was, when Mr. Kipp filed – fired Egar, that he did so because he was upset with the way in which Egar was investigating the case. I don't believe that that was – Is there anything in the record that documents that statement? That documents that he was frustrated – Upset with – with Egar for investigating the case by reaching out to his family and – I believe there was a letter where he indicated some frustration with Ms. Poore, the social worker who assisted on the case. But there's no explicit statement that he said, I want Egar gone because he's conducting a mitigation investigation that I don't agree with. But does the evidence demonstrate that he was frustrated with the fact that the mitigation investigation was going in through his personal life and he was unhappy with that? I think he expressed some frustration in that regard, but I don't believe that negates Mr. Horan's obligation to continue to pursue that evidence. Just quickly in my remaining 20 seconds, with regard to the juror misconduct claim, I want to note again that Respondent conceded misconduct in state court, specifically as to the experiment. It is extrinsic evidence and they admitted so in state court and I don't believe they're permitted to now change that perspective. Respondent also argued that it didn't increase the likelihood of the conviction for attempted rape, except that the – at trial the state specifically argued that the condition of the pants did support attempted rape. So an experiment that goes to that condition does in fact improperly increase the likelihood that he was convicted of attempted rape in the special circumstance improperly. If there are no further questions. Thank you for your time. Thank you. Thank you. Thank you very much, counsel. We appreciate your arguments this morning. These are always hard cases and so the panel is very appreciative. Thank you. Thank you very much. We're going to take a recess now and we'll resume at 10.30 as we scheduled so everybody can have a break. All rise.
judges: Paez, Murguia, Nguyen